FILED

2014 JUN 30  PM 3: 31

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES ROSE, ) | |
| ) | CASE NO.  4:14CV0082 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| HEALTH SERVICES ADMINISTRATOR ) | |
| BUNTS, *et al.*, ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | [Resolving ECF No. 3] |

*Pro se* Plaintiff James Rose filed this *Bivens*[1] action against former FCI Elkton Health

Services Administrator ("HSA") Bunts, FCI Elkton Assistant HSA Barnes, FCI Elkton Physician

Dr. Dunlop, FCI Elkton Physician Lepiane, and FCI Elkton Medical Department Employees John

and Jane Doe.  In the Complaint (ECF No. 1), Plaintiff alleges Defendants failed to recognize a

drug interaction from the medications he was taking which resulted in difficulty maintaining

proper levels of medication in his blood.  He seeks monetary relief.

In addition, Plaintiff filed an *Ex Parte* Application for an Order to Seal the case.  ECF

No. 3.  He contends his Complaint (ECF No. 1) contains a description of his medical conditions,

which he desires to keep private.  For the reasons set forth below, the Application is denied and

the file is ordered to be unsealed.

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.
388 (1971) provides federal inmates and detainees with a cause of action analogous to 42
U.S.C. § 1983.

(4:14CV0082)

# I. Background

Plaintiff self-surrendered to FCI Elkton on April 26, 2012 to begin to serve his sentence. He brought his prescription medications with him to prison.  ECF No. 1 at ¶17.  Among these medications was Dilantin, which he was prescribed to combat seizures he experienced after an automobile accident.  ECF No. 1 at ¶19.  He asserts he was told the prison pharmacy did not have this medication in stock, but it would be delivered within forty-eight hours.  ECF No. 1 at ¶23. Indeed, he was given the medication the following day.  ECF No. 1 at ¶ 24.  Plaintiff claims he noticed immediately that the dosage was reduced from 500 mg to 300 mg.  ECF No. 1 at ¶24.  He questioned the reduction and was informed that Dr. Dunlop felt that 500 mg was "too high." ECF No. 1 at ¶25.

Dr. Dunlop ordered Plaintiff's blood to be drawn on May 18, 2012.  These results showed his Dilantin levels to be low.  ECF No. 1 at ¶ 27-28.  Plaintiff reported to sick call on May 22, 2012 to express his concerns with his Dilantin levels and his dosage was returned to 500 mg. ECF No. 1 at ¶29.

Thereafter, on June 12, 2012, Plaintiff reported to sick call expressing concern because his hands were shaking.  ECF No. 1 at ¶30.  His blood was drawn and this time the presence of Dilantin in his blood was at toxic levels.  ECF No. 1 at ¶32.  He was ordered to stop taking this medication.  ECF No. 1 at ¶31.  Subsequent blood draws on June 15, 2012 and June 18, 2012 revealed his levels had decreased.  ECF No. 1 at ¶32.  He resumed taking the Dilantin on June 21, 2012 with a 400 mg dosage.  ECF No. 1 at ¶33.  He had blood tests done on June 27, 2012,

2

(4:14CV0082)

July 4, 2012, and July 20, 2012.  ECF No. 1 at ¶33-38.  He was ordered to stop taking the

Dilantin once again because his levels were too high.  ECF No. 1 at ¶38.

 Plaintiff is also HIV-positive.  He contends that prior to his self-surrender, his CD4 count

was at 419.  ECF No. 1 at ¶41.  His June 27, 2012 blood test revealed his CD4 count decreased to

341.  ECF No. 1 at ¶42.  He claims he sent inmate requests to staff forms to HSA Bunts to voice

his concerns about his medical care but did not receive an answer.  ECF No. 1 at ¶45.

 Plaintiff alleges he began reading drug interaction pamphlets and concluded the

fluctuations in his Dilantin levels and the decline in his CD4 count were due to a drug interaction

with an antidepressant Dr. Dunlop prescribed for him.  ECF No. 1 at ¶43.  He sent additional

communications to HSA Bunts.  ECF No. 1 at ¶45.  When he did not receive a response, he

approached Assistant HSA Barnes at "Main Line."  ECF No. 1 at ¶46.  He discussed his concerns

with Barnes but indicates that conversation was conducted in the presence of other inmates and

not in a private room.  ECF No. 1 at ¶46.  Plaintiff approached the FCI Elkton Pharmacist in

December 2012 and presented the paperwork on drug interactions with the antidepressant he was

taking.  ECF No. 1 at ¶ 50.  The Pharmacist conveyed that information to Dr. Lepiane, who

changed the antidepressant to Celexa.  ECF No. 1 at ¶53.  Thereafter, Plaintiff's Dilantin levels

stabilized.  ECF No. 1 at ¶55.

 Plaintiff's CD4 counts, however, continued to decrease.  ECF No. 1 at ¶56.  He contends

FCI Elkton will not schedule him to see an outside specialist.  ECF. No. 1 at ¶57.  Instead he is

monitored by an infectious disease specialist within the prison once every four to six months.

(4:14CV0082)

ECF No. 1 at ¶58.  He contends this is not sufficiently frequent to adequately monitor his condition.

Plaintiff asserts Defendants violated his Eighth Amendment rights.  He states the Defendants "either through negligence, or as an intentional act, caused Rose to suffer a deprivation of his Eighth Amendment Constitutional right to be free from cruel and unusual punishment, and to be offered equal access to adequate health care."  ECF No. 1 at ¶65.  He seeks actual and punitive damages.

## II.  Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted or if it lacks an arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke*, 490 U .S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible."  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  *See also Lawler*, 898 F.2d at 1199.

When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a

4

(4:14CV0082)

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Id.* (citation omitted). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.  Law and Analysis

#### A.  Eighth Amendment

Plaintiff claims Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v.*

5

(4:14CV0082)

*Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff's medical conditions are sufficiently serious to meet the objective criteria; however, he fails to allege facts to suggest Defendants acted with deliberate indifference to satisfy the subjective criteria. The subjective component requires a showing that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety. *Wilson*, 501 U.S. at 302-03. Deliberate indifference "entails something more than mere negligence."

6

(4:14CV0082)

*Farmer*, 511 U.S. at 835.  An inmate must show that prison officials had "a sufficiently culpable state of mind" in denying medical care.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  This standard is met if "the official knows of and disregards an excessive risk to the inmate's health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* (quoting *Farmer*, 511 U.S. at 837).

Here, the FCI Elkton physicians frequently tested Plaintiff's blood to monitor his Dilantin levels, as well as his CD4 counts.  He had blood drawn on May 1, 2012, May 18, 2012, May 22, 2012, June 12, 2012, June 15, 2012, June 18, 2012, June 27, 2012, July 4, 2012, and July 20, 2012.  Plaintiff mentions his blood was drawn on December 5, 2012, but does not elaborate on the treatment he received between July 20, 2012 and December 5, 2012.  He was also seen regularly by a physician in conjunction with the blood tests to monitor his Dilantin levels and his CD4 counts.  While Plaintiff has not been scheduled to be seen by an outside specialist, he does meet with an Infectious Disease Specialist in FCI Elkton every four to six months.  He is also monitored by the FCI Elkton physicians between visits with the specialist.  Plaintiff's allegations do not suggest that Defendants are failing provide any medical care for his conditions.

To the contrary, Plaintiff's allegations appear to be two-fold.  First, he claims Dr. Dunlop did not recognize a possible drug interaction, which caused his Dilantin levels to fluctuate significantly.  Second, he claims FCI Elkton doctors can neither explain or stop the decrease in his CD4 counts and he wants to be treated by an outside infectious disease specialist.  Neither of these assertions describe deliberate indifference.  At best, they amount to allegations of medical

7

(4:14CV0082)

malpractice.  Neither medical malpractice nor mere dissatisfaction with a doctor's prescribed

course of treatment is a violation of the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 106

(1976).  The duty to provide a certain level of health care to incarcerated offenders under the

Eighth Amendment is a limited one.  It sets the Constitutional minimum standard that must be

provided to avoid a deprivation that offends "contemporary standards of decency."  *Hudson*, 503

U.S. at 8.  It does not require the prison to provide a prisoner with unfettered access to the state

of the art medical treatment of his choice.  *See Id.* at 9.  Where, as here, a physician provides

constitutionally acceptable care, his or her inability to effect a final cure for Plaintiff's condition

or slow its progression is not proof of deliberate indifference.  *See Snipes v. DeTella*, 95 F.3d

586, 591 (7th Cir. 1996).  While Plaintiff may believe he would receive better care from an

outside specialist, the Eighth Amendment does not require the prison to provide him with the

services of the physician of his choice.

### B. Application for an Order to Seal

Plaintiff also filed an *Ex Parte* Application for an Order to Seal the case.  ECF No. 3.  It

is well-established that this Court "has supervisory power over its own records and files."  *Nixon

v. Warner Communications Inc.*, 435 U.S. 589, 598 (1978).  This  authority includes fashioning

protective orders that limit access to certain court documents.  *See* Fed. R. Civ. P. 26(c).  The

Court's power to seal records, however,  is subject to the "long-established legal tradition" of

open access to court documents.  *Brown & Williamson Tobacco Corp. v. F.T. C.*, 710 F.2d 1165,

1177 (6th Cir. 1983).  "[T]he courts of this country recognize a general right to inspect and copy

public records and documents, including judicial records and documents."  *Nixon*, 435 U.S. at

8

(4:14CV0082)

597 (footnotes omitted); *Brown & Williamson*, 710 F.2d at 1180 (ordering Federal Trade

Commission documents unsealed because "[t]he public has a strong interest in obtaining the

information contained in the court record."); *see also In re Perrigo Co.*, 128 F.3d 430, 446 (6th

Cir. 1997) (Moore, J., concurring in part and dissenting in part) (declaring that "[s]ealing court

records . . . is a drastic step, and only the most compelling reasons should ever justify

non-disclosure of judicial records").  There is a "presumptive right" of public access to court

records, which permits inspection and copying.  *Cristini v. City of Warren*, No. 07-11141, 2011

WL 5304566, at *2 (E.D. Mich. Nov. 3, 2011).

  In exercising its discretion to seal judicial records, the Court must balance the public's

common law right of access against the interests favoring nondisclosure.  *See Nixon*, 435 U.S. at

602.  "Only the most compelling reasons can justify non-disclosure of judicial records."  *In re

Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983).  In order to have

confidential information in a court record kept under seal, the movant must make a specific

showing that disclosure of information would result in some sort of serious harm.  *Tinman v.

Blue Cross & Blue Shield of Michigan*, 176 F.Supp.2d 743, 745 (E.D.Mich. 2001).  "The mere

fact that the production of records may lead to a litigant's embarrassment, incrimination, or

exposure to further litigation will not, without more, compel the court to seal its records."

*Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  A showing of

substantial personal or financial harm is a prerequisite to an order sealing a file.  *Id.*

  In this case, no such showing has been made.  The only grounds offered in support of

sealing the case is an assertion that it contains private and personal information about Plaintiff's

9

(4:14CV0082)

medical condition.  More is required to justify the drastic step of sealing the Court's record.

While Plaintiff states he provided intimate details of his medical condition, the information

disclosed in his Complaint (ECF No. 1) was actually general and nonspecific.  It was certainly no

more sensitive than the other cases filed by prisoners contesting the medical care they received at

a correctional institution, or those filed by individuals appealing denials of social security

disability benefits.  Furthermore, although the Application had not yet been ruled upon, the

Complaint (ECF No. 1) was filed under seal.  A document may be filed under seal in this Court

only upon approval of the Court.

### IV.  Conclusion

Accordingly, Plaintiff's *Ex Parte* Application for an Order to Seal (ECF No. 3) is denied.

The Clerk's Office is ordered to remove the seal from the record in this action.  This case is

dismissed pursuant to 28 U.S.C. §1915(e).  The Court certifies, pursuant to 28 U.S.C. §

1915(a)(3), that an appeal from this decision could not be taken in good faith.


IT IS SO ORDERED.

 June 30, 2014
Date                                              Benita Y. Pearson
                                                  United States District Judge



10